DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jamul Ratub El, | ) | |
| | ) | |
| | ) | Civil Action No. 5:12-cv-03481-RMG-KDW |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Larry Cartledge, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Jamul Ratub El ("Petitioner" or "El"), a state prisoner, filed this Petition for a

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to

28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and

Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 15,

16. On March 21, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the

court advised Petitioner of the summary judgment and dismissal procedures and the possible

consequences if he failed to respond adequately to Respondent's motion. ECF No. 17. Petitioner

filed a response in opposition to Respondent's motion on April 29, 2013. ECF No. 21. Having

carefully considered the parties' submissions and the record in this case, the undersigned

recommends that Respondent's Motion for Summary Judgment, ECF No. 16, be GRANTED.

I.      Factual Background

Petitioner is currently incarcerated in the Turbeville Correctional Institution of the South

Carolina Department of Corrections ("SCDC"). In 2006, Petitioner was indicted in the March

term of the York County Grand Jury for trafficking in cocaine. App. 561-62.[1]  On May 1-3,

---

[1] Citations to "App." refer to the Appendix to Petitioner's claim for collateral relief in the state
courts of South Carolina, which is available at ECF Nos. 15-1, 15-2, 15-3, 15-4 and 15-5 in this
habeas matter.

2006, a jury trial was conducted before the Honorable John C. Hayes, III, in York, South Carolina. App. 1-452. Attorney Michael Brown represented Petitioner, and Solicitors E.B. Springs, IV and Jenny Desch represented the State. App. 1. Petitioner was convicted of trafficking cocaine and was sentenced to 20 years imprisonment. App. 447, 452.

II.     Procedural History

Trial counsel timely filed and served the Notice of Appeal. The State filed its Final Brief of Respondent on November 13, 2007. App. 536-48. Petitioner filed his Final Brief of Appellant on January 2, 2008. App. 525-33. On October 15, 2008, the South Carolina Court of Appeals issued an order affirming Petitioner's conviction. App. 551-552. The Remittitur was issued on October 31, 2008. App. 553. On January 14, 2009, Petitioner filed an application seeking post-conviction relief ("PCR") arguing that his trial and appellate counsel were ineffective. App. 454-68. The State filed its Return on May 7, 2009, requesting an evidentiary hearing on Plaintiff's ineffective assistance of counsel claims. App. 470-74. On August 4, 2009, an evidentiary hearing was conducted before the Honorable Lee S. Alford in York, South Carolina. App. 475. Petitioner was represented by Jeremy T. Canipe, Esq., while the State was represented by Assistant Attorney General Ashley A. McMahan. *Id.* Petitioner and his former trial counsel, Michael Brown, testified at the hearing. App. 478-514. On August 27, 2009, the PCR court issued an Order denying Petitioner's grounds for relief and making the following findings of fact and conclusions of law:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

**Ineffective Assistance of Counsel**

The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002) (citing Rule 71.1(e), SCRCP). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler; Id. The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625, *citing* Strickland. Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing Strickland).

A paid police informant, Amanda Page, informed the police that she could purchase two ounces of cocaine for $2,000 from Charles "Chuck" Horne who has a supplier. In the presence of police officers, she set up the drug deal and the telephone call to Horne was recorded. Horne instructed her to be at his house in 25 minutes. The police had surveillance vehicles go to Horne's home. A white Ford Expedition with a North Carolina license plate was parked in front of the home. The supplier was supposed to come from Charlotte. They could see the driver but did not know who else was in the vehicle. A light in the vehicle indicated a cell phone was being used. The police believed this to be Horne's supplier. They parked and observed.

The Expedition remained parked there for about twenty minutes. Police officers testified that they did not know if the cocaine was in the house or in the vehicle. If the cocaine was in the house, Horne could flush it before they got in. The informant was in a police car with a female officer but not at the scene. They devised a plan in which the informant would call Horne, tell him she was in the

vicinity but had been stopped by police, and had no driver's license. She wanted Horne to come get the car. She told Horne the money was in the glove box and she would leave car keys under the floor mat.

After that phone call, Horne went out of the house and talked to the Applicant in the Expedition. Horne then walked down the street (it was later learned that he was looking for a neighbor to take him to where the informant's car was stopped but no one was home) and came back to the Expedition. He then got in the Expedition and they drove to the location where the informant's vehicle was supposed to be. A marked police car and a uniformed officer were placed near the location and fell in behind the Expedition. Applicant and Horne became confused at the location and started to turn around. The marked police vehicle turned on its blue lights to stop the Expedition. Applicant then made a U-turn and tried to flee the scene but was hemmed in by other officers who arrived with blue lights on. The officers testified that they wanted to get the vehicle away from the house and to get Horne to leave the house. If the cocaine had not been found in the Expedition as they thought it would be, they could have gotten a search warrant for the home.

## Motion to Suppress

Trial counsel testified that he probably should have made a motion to suppress the admission of the cocaine found in the Applicant's vehicle. He testified that he did not believe the motion would have been granted. In light of the recent U.S. Supreme Court case of <u>Arizona v. Gant</u>, 129 S.Ct. 1710, 173 Led.2d 485 (2009), he thought the motion should have been made. However, this change in case law did not exist at the time of the Applicant's trial and changed the law as to the search of vehicles for weapons allegedly made for the protection of police officers when the driver or occupant was removed from the vehicle and prevented from having immediate access to the contents of the vehicle. This case did not change the law, which allows the search of a vehicle driven on a public road creating exigent circumstances when the police have probable cause to believe that contraband such as illegal drugs will be found in the vehicle.

Neither Horne's attorney nor the Applicant's attorney made a motion to suppress the cocaine. This Court finds that even if the Applicant's attorney rendered ineffective assistance in failure to move to suppress the cocaine, he suffered no prejudice. The totality of the circumstances clearly established probable cause to search the Expedition. A motion to suppress would have been properly denied.

## Motion for Mistrial

A motion for mistrial based on prosecutorial misconduct (fact statement made by Solicitor Springs not supported by the record) was made by trial counsel and denied. The trial judge gave a curative instruction. This issue was raised on

direct appeal and denied. This Court finds no prejudice to the Applicant because the misstatement by the Solicitor did not rise to the level required for a mistrial and was properly cured by trial judge's curative instruction.

Further, trial counsel was effective in that he objected to the misstatement. Whether or not a mistrial should have been granted is a legal issue that was addressed by the appellate court. Post-conviction relief is not a substitute for a direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1974). A post-conviction relief application cannot assert any issues that could have been raised at trial or on direct appeal. Ashley v. State, 260 S.C. 436, 196 S.E.2d 501 (1973).

## Summary

This Court finds in regards to the allegation of ineffective assistance of counsel, the Applicant's testimony is not credible, while also finding trial counsel's testimony is credible. This Court further finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, was thoroughly competent in their representation, and that trial counsel's conduct does not fall below the objective standard of reasonableness.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test - that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant.

This Court also finds the Applicant has failed to prove the second prong of Strickland - that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier *supra.* Therefore, this allegation is denied.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post-conviction relief must be denied and dismissed with prejudice.

App. 518-23. Petitioner did not file a Rule 59(e), SCRCP, Motion to Alter or Amend.

Petitioner, represented by M. Celia Robinson, Esquire, of the South Carolina Commission on Indigent Defense, filed a Petition for Writ of Certiorari, dated April 30, 2010. ECF No. 15-6.

The three questions presented, quoted verbatim, were:

1. Did the PCR judge err in finding that trial counsel did not provide deficient representation and that petitioner was not prejudiced by trial counsel's failure to make a motion to suppress the cocaine discovered and seized in violation of petitioner's right to be free of unreasonable searches and seizures as guaranteed by the Federal and State constitutions?

2. Did the PCR judge err in finding that trial counsel's representation was not deficient in failing to preserve trial error for review on appeal where counsel failed to raise an objection to the sufficiency of the curative instruction and failed to make a motion for mistrial in response to the prosecution's misstatement of fact to the detriment of petitioner's character?

3. Did the PCR judge err in finding that trial counsel was not ineffective in failing to secure the notary's presence at trial in light of the importance of Horne's exculpatory affidavit and where, as result of counsel's failing to subpoena the notary or to make a motion for a continuance so that the notary could be present to testify, the accused was forced to testify in order to have Horne's affidavit admitted into evidence?

*Id.* at 3. The State filed a Return to Petition for Writ of Certiorari on July 12, 2010. ECF No. 15-7. The South Carolina Supreme Court issued an Order on August 19, 2011 granting Petitioner's Petition for Writ of Certiorari. ECF No. 15-8. Petitioner filed a Final Brief of Petitioner on January 19, 2012. ECF No. 15-9. The State filed its Final Brief of Respondent on April 23, 2012. ECF No. 15-10. The South Carolina Supreme Court issued an Order on October 10, 2012, dismissing the Writ as improvidently granted. ECF No. 15-11. The Remittitur was issued on November 1, 2012. ECF No. 15-12. Petitioner filed his habeas Petition on December 11, 2012. ECF No. 1.

III.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

IV.   Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus, quoted verbatim:

> GROUND ONE:  Petitioner was denied effective assistance of trial counsel's failure to move for suppression of cocaine seized in violation of his Fourth Amend rights against illegal search and seizure.

Supporting facts: While Petitioner was driving a co-worker to pick up his friend's car, the police stopped his car and arrested him and co-worker and searched his car without probable cause. The police found cocaine in his car and charged all occupants of the car with a drug trafficking offense. Petitioner raised and argue in his application for post-conviction relief (PCR) that his trial counsel was ineffective and prejudiced his case by failing to move to suppress the drugs seized from his car in violation of Fourth Amendment requirements.

GROUND TWO: Trial counsel was ineffective in failing to object to sufficiency of curative instruction and move for mistrial in response to prosecutor's misstatement of fact to detriment of petitioner's character.

Supporting facts: During the questioning of petitioner's female friend, Chantal Griffin, the prosecutor asked her did she know petitioner was married. Petitioner's counsel objected to prosecutor's misstatement of fact, given that petitioner had never been married. The misstatement was particularly harmful because the drug supplier had been a married man, whereas petitioner was a single man. Trial counsel failed to properly object to prosecutor's prejudicial comments and renew his motion for mistrial to preserve this issue for appellate review.

GROUND THREE: Trial counsel was ineffective in failing to subpoena the notary's presence at trial or to make a motion for continuance so that notary could be present.

Supporting facts: Petitioner's co-worker, Charles Horne, gave a sworn affidavit that the drugs was his and that petitioner had no involvement in any drug transaction. However, counsel failed to subpoena the notary who notarized Horne's signature on the affidavit. Thus, given that defense had no guarantee that Horne would take the stand, the only other avenue open to entering affidavit in evidence under Judge's ruling was for petitioner to testify. Petitioner's counsel rendered ineffective assistance that was prejudicial by failure to ensure presence of notary.

ECF No. 1 at 5-8.

B. Habeas Corpus Standard of Review

1. Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the

underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 399 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

> (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B) (i) there is an absence of available State corrective process; or

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d

767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of

the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited

circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 496-97. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Coleman*, 501 U.S. at 752-53; *Murray v. Carrier*, 477 U.S. at 488-89. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 503-506. To show actual prejudice, the petitioner must demonstrate more than plain error.

V.     Analysis

A federal court may issue a writ of habeas corpus on claims adjudicated on their merits in state court only if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007) (internal quotation marks omitted). "A state court's decision is contrary to clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by th[e] [Supreme] Court on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at' an opposite result." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Stated differently, to obtain federal habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011). "[S]o long as 'fairminded jurists could disagree on the correctness of [a] state court's decision,'" a state court's adjudication that a habeas claim fails on its merits cannot be overturned by a federal court. *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

A.  Merits

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970).  In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice.  Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1.  Ground One: Trial Counsel was Ineffective in Failing to Make a Motion to Suppress

Petitioner contends, in Ground One of his Petition, that his trial counsel was ineffective for failing to move to suppress the drugs found in his vehicle that were seized in violation of the Fourth Amendment. ECF No. 1 at 5. Respondent argues that Petitioner's contention lacks merit and that the PCR judge's factual findings and conclusions that Petitioner was not prejudiced by

his counsel's failure to move to suppress the drugs are supported by the record and are not objectively unreasonable under § 2254(d)(2). ECF No. 15 at 15. Respondent further argues that the PCR court's decision "was and is consistent with clearly established precedent of the United States Supreme Court." *Id.* Petitioner alleges that "there was no evidence beyond [his] association with [co-defendant] Horne to connect him to the drugs found in this case. Therefore, the drug evidence seized in violation of petitioner's Fourth Amendment rights was subject to suppression." ECF No. 21-1 at 7. Petitioner argues that he was prejudiced by his counsel's failure to move for suppression because "there was a reasonability of a different outcome absent the drug evidence." *Id.* Petitioner contends that the South Carolina Supreme Court's denial of his Petition was "an unreasonable determination of the facts in light of the record before the state court." *Id.*

It is well-settled that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment-subject to only a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Pertinent here is the so-called "automobile exception," which the Supreme Court first recognized in *Carroll v. United States*, 267 U.S. 132 (1925). Under this exception, a police officer may search a vehicle without a warrant if "probable cause exists to believe it contains contraband" and the vehicle is "readily mobile." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). If both conditions are met, the police officer may conduct a warrantless search "that is as thorough as a magistrate could authorize in a warrant." *United States v. Ross*, 456 U.S. 798, 800 (1982). Such a search may cover all areas of the vehicle, including any of its "secret compartments." *United States v. Bullock*, 94 F.3d 896, 899 (4th Cir. 1996).

The PCR court made the following findings of fact, quoted verbatim, in support of its conclusion that Petitioner was not prejudiced by his counsel's failure to make a motion to suppress because "[t]he totality of the circumstances clearly established probable cause to search the Expedition." App. 522.

- A paid police informant, Amanda Page, informed the police that she could purchase two ounces of cocaine for $2,000 from Charles "Chuck" Horne who has a supplier.

- In the presence of police officers, [Page] set up the drug deal and the telephone call to Horne was recorded.[2] Horne instructed her to be at his house in 25 minutes.

- The police had surveillance vehicles go to Horne's home. A white Ford Expedition with a North Carolina license plate was parked in front of the home [when the police arrived]. The supplier was supposed to come from Charlotte.[3]

- [The police] could see the driver but did not know who else was in the vehicle. A light in the vehicle indicated a cell phone was being used. The police believed this to be Horne's supplier. They parked and observed.

- The Expedition remained parked there for about twenty minutes. Police officers testified that they did not know if the cocaine was in the house or in the vehicle. If the cocaine was in the house, Horne could flush it before they got in.

- The informant was in a police car with a female officer but not at the scene. [The police] devised a plan in which the informant would call Horne, tell him she was in the vicinity but had been stopped by police and had no driver's license. She wanted Horne to come get the car. She told Horne the money was in the glove box and she would leave car keys under the floor mat.

- After that phone call, Horne went out of the house and talked to the Applicant in the Expedition. Horne then walked down the street (it was later learned that he was looking for a neighbor to take him to where the informant's car was stopped but no one was home) and came back to the Expedition. He then got in the Expedition and they drove to the location where the informant's vehicle was supposed to be.

---

[2] The tape recording was played for the jury at trial, App. 175, but the undersigned is not privy to the recording, nor has a transcript of the recording been provided.

[3] Page testified during the trial but did not make reference to the supplier coming from Charlotte or out-of-town. App. 169-203. Officer Brown, lead investigator involved with the eventual arrest of Defendant El, testified during the trial that the supplier was supposed to come from Charlotte. *See* App. 54.

- A marked police car and a uniformed officer were placed near the location and fell in behind the Expedition. Applicant and Horne became confused at the location and started to turn around. The marked police vehicle turned on its blue lights to stop the Expedition.

- Applicant then made a U-turn and tried to flee the scene but was hemmed in by other officers who arrived with blue lights on. The officers testified that they wanted to get the vehicle away from the house and to get Horne to leave the house. If the cocaine had not been found in the Expedition as they thought it would be, they could have gotten a search warrant for the home.

App. 518-521.

Having reviewed the record, the undersigned finds that the facts articulated by the PCR court support its finding that the officers had reasonable suspicion that there were narcotics in Petitioner's vehicle. The undersigned further finds that the PCR court's conclusion that there was probable cause to search Petitioner's vehicle was reasonable, and therefore, even if Petitioner's trial counsel had made a motion to suppress, that motion likely would not have been granted. Petitioner has failed to show he was prejudiced by trial counsel's failure to file a motion to suppress. Accordingly, Petitioner is not entitled to habeas corpus relief on Ground One of his Petition as he has not shown that the PCR court's decision constitutes an unreasonable application of *Strickland v. Washington* under § 2254(d)(1).

2. Ground Two: Failure to object to object to improper closing

In Ground Two of his habeas Petition, Petitioner argues that his trial counsel was ineffective when he failed to move for a mistrial in response to the prosecutor's misstatement of fact when the prosecutor questioned Petitioner's car passenger, Ms. Griffin, about whether she knew Petitioner was married. ECF No. 1 at 6. Petitioner contends that the prosecutor's question was detrimental to his character and his trial counsel was ineffective for failing to object to the sufficiency of the curative instruction. *Id.* Respondent contends that this ground should be denied because the South Carolina appellate courts addressed this argument and found, "as a

matter of state law . . . that the trial judge's curative instruction cured the improper testimony." ECF No. 15 at 26. Respondent also argues that Petitioner was not prejudiced by the prosecutor's misstatement of fact because the entire record shows that the nature of Petitioner's relationship with Ms. Griffin was not placed into evidence until Petitioner took the stand and testified. *Id.* at 27. Petitioner contends that his trial counsel's "failure to object to the sufficiency of the judge's curative instruction was ineffective assistance that was per se prejudicial" because there was no evidence connecting Petitioner to the drug transaction beyond Petitioner's connection with his alleged co-defendant. ECF No. 21-1 at 8.

Petitioner raised Ground Two during his direct appeal of his conviction. In affirming Petitioner's conviction, the South Carolina Court of Appeals cited to state law and found that ground was not preserved for appellate review, that the trial court's curative instruction cured any error regarding improper testimony, and that a mistrial should only be granted for plain and obvious reasons and not ordered in every case when incompetent evidence is received. App. 552. In its order of dismissal, the PCR court also denied this ground finding that Petitioner was not prejudiced because "the misstatement by the Solicitor did not rise to the level required for a mistrial and was properly cured by trial judge's curative instruction." App. 522.

It would be improper for this court to revisit the Court of Appeals' determination that the trial court's curative instruction cured any prejudice to Petitioner because the South Carolina Court of Appeals cited to South Carolina law as authority in denying the appeal. "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, the undersigned finds that the Court of Appeals rejection of this ground for relief did not result in an unreasonable application of *Strickland* and was not based upon an unreasonable determination of facts in light

of the state court record. The undersigned further finds that it was not unreasonable for the PCR court to find that Petitioner failed to meet his burden of showing that he was prejudiced by his trial counsel's failure to object to the trial court's curative instruction. The undersigned finds that the PCR court's finding was supported by the record, and the decision was not contrary to, nor an unreasonable application of, clearly established federal law under §2254(d)(1). The undersigned therefore recommends that Ground Two be dismissed.

### B. Procedural Bar

#### 1. Ground Three: Failure to subpoena witness

Ground Three of Petitioner's habeas Petition contends that "his trial counsel was ineffective in failing to subpoena the notary's presence at trial or to make a motion for continuance so that [the] notary could be present." ECF No. 1 at 8. Respondent alleges that this ground was procedurally defaulted because it was not addressed in the PCR court's order of dismissal and is therefore not available for review. ECF No. 15 at 29-30. Respondent further argues that Petitioner's default should not be excused because Petitioner cannot show cause for the procedural default. *Id.* at 31. Petitioner contends that this ground is not procedurally defaulted because this ground was raised to the PCR court and raised "to the South Carolina Supreme Court in his Writ of Certiorari." ECF No. 21-1 at 9.

The undersigned has reviewed the PCR court's order, Petitioner's appellate brief, and the South Carolina Supreme Court's Order affirming Petitioner's conviction and sentence, and finds that Petitioner's claims regarding his trial counsel's failure to subpoena the notary was not raised before and/or ruled on by the PCR court or the South Carolina appellate courts. Therefore, this issue is procedurally barred from federal habeas review. *See Yeatts v. Angelone,* 166 F.3d 255, 261 (4th Cir.1999); *see also* S.C. Code Ann. § 17–27–90, –45; *Aice v. State*, 409 S.E.2d 392, 394

(S.C. 1991); SCACR 203(d)(3), 243. Accordingly, Petitioner has bypassed his state remedies and, as such, is procedurally barred from raising Ground Three of his habeas Petition unless he can demonstrate cause to excuse his default.

Petitioner cites to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), in his Response to Respondent's summary judgment motion, and argues that an ineffective assistance of trial counsel claim may be addressed "when collateral counsel's ineffectiveness caused a procedural default in an initial-review collateral and petitioner demonstrates that that claim has some merits." ECF No. 21-1 at 9.

In *Coleman v. Thompson*, the Supreme Court held that ineffective assistance of counsel will constitute cause only if it is an independent constitutional violation. 501 U.S. 722, 755 (1991). In *Martinez*, the Court recognized a narrow exception to the rule established in *Coleman* and held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315.

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*. To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318 (internal citation omitted).

Because Petitioner had PCR counsel, Petitioner would need to show that his PCR counsel was ineffective for failing to present claims concerning trial counsel's failure to subpoena the notary. The undersigned has reviewed the record and finds that Petitioner has not demonstrated

that his PCR counsel failed to raise or to develop adequately any ineffective-assistance-of-counsel ground that could be considered "substantial" under *Strickland* standards. Petitioner has, therefore, not shown sufficient cause and prejudice to excuse the default of the above-referenced claim. Additionally, Petitioner has not argued that he is actually innocent of the crimes, such "that failure to consider the claims will result in a fundamental miscarriage of justice." *Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750)); *see also Weeks v. Angelone*, 176 F.3d 249, 269 (4th Cir. 1999). The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Ground Three of the habeas Petition.[4]

VI.     Conclusion

The undersigned has considered each of Petitioner's grounds for habeas corpus relief and recommends that each be dismissed. Accordingly, for the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No.16, be GRANTED and the habeas Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

October 10, 2013                                         Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

---

[4] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Grounds Three.